On the second case of the morning call, 2-19, excuse me, 2-18 over 8-5-0, City of West Chicago v. Virginia are Pietrobon's trustee of the Pietrobon Family Trust. On behalf of the Avalon, Ms. Mary Dixon. On behalf of the Avalon, Mr. James J. Spike. Ms. Dixon. May it please the Court, my name is Mary Dixon. I represent the City of West Chicago. The City of West Chicago requests that this Court reverse the judgment of the Circuit Court as it is truly against the manifest way to the evidence. In fact, review of the evidence admitted at the Traverse of this case supports the City's efforts to acquire the private property owned by the defendants for construction of a public road. Review of the Circuit Court's letter of opinion with regard to the Traverse, which is seven pages long, clearly establishes that five of the pages of the order are centered on the Court's analysis of the enabling ordinance, which was the springboard to the filing of the condemnation. Counsel, generally, the law is pretty clear that the enacting of the ordinance establishes a primifacia case. Yes. The trial court seemed to be hung up on the issue that West Chicago was proceeding under a mistaken impression that Reccy Road was a public road, which obviously wasn't the case at all. Why would you have filed a condemnation action if it was public? Correct. I agree. And I tried pointing that out to the Circuit Court because it was apparent that there was some confusion relative to this. In particular is particularly that confusion is highlighted in the order where because this road was designated on documents as a public road or Reccy Road, we, the City of West Chicago, outlined that. But it wasn't to say that there was a continuing belief in the filing of the condemnation that we were seeking to acquire public property. Well, it was apparent that the manager, the village manager, whoever it was, clearly testified. They were aware that this was not a public road before the ordinance was enacted and before the lawsuit was filed, correct? Correct. There had always been a longstanding dispute that the City did believe for a very long period of time that it was public property. But when the City determined that it was not, at least not so that we should acquire the property and we commenced negotiations with the private property owner to acquire it, there should have been no confusion on this issue. We were attempting to acquire private property. The filing of condemnation action in the State of Illinois and every other jurisdiction in the United States is a public admission that what the municipality is trying to do is to acquire private property. There should have been no confusion in the court in any means that what we were attempting to do was to acquire some public property because there's no reason for that. But aside from that, let's give the other side's argument some consideration here. They seem to be saying, well, if there was a mistake, which you've sort of obviously addressed the issue, then the ordinance would be invalid. Are you aware of any authority that says even if there was a preexisting at one time mistake regarding the road, that that would legally invalidate the ordinance? Are you aware of any authority that says that? Your Honor, I searched. There's no authority for that. And the defendants themselves, although they throw that argument out to the court, cite no case law to support that argument. The prefatory remarks in the ordinance were to set up the history for the necessity of the taking. The city believed that the property had been in the public domain, and on that, the city engaged in planning. But the filing of the condemnation itself was a public admission that the property was privately held and the city was prepared to pay fair cash market value for the property. The circuit court was just wrong. The first five pages of the letter of opinion are just clearly in error and should not serve as the basis for the dismissal of the traveler or for the grant of the travelers. That notwithstanding, the court went on to say in his order that the taking was not for a public purpose. What's your response to that? That it only benefited one party and that it was truly not for a public purpose. What's your argument? Well, again, Your Honor, in that regard, under all Illinois law, this is truly a public purpose, and the circuit court erred. Because what public purpose is first, the municipality has the right to acquire property for a public road. That's clear. The law is clear on that. The testimony that was admitted at the traveler's hearing was that this property, this road, was going to be owned by the city of West Chicago. It was going to be built to city of West Chicago's road standards, and it was going to be open freely to the public. Whoever wanted to use the property would be allowed to use it. The case Department of Transportation v. Carina, which we cited, held public use requires that all persons must have an equal right to the use and that it must be in common upon the same terms, however few the number who availed themselves of it. The law is well settled that a public road is a public highway regardless of the number of people who use it, or if everyone who desires may lawfully use it, and is the right of the public travel and not the exercise of the right which constitutes a public highway. Clearly, this was a public road. Now, the fact that a neighboring property owner, a man named Conti, might use the road principally or even primarily doesn't undermine this, because there's been established case law in the state of Illinois that holds. A road can be built, and it can serve a private interest so long as the public interest is also served. We showed those cases. We argued those cases to the trial court, and instead of a thoughtful analysis of the cases that we cited, the court just concluded that the city was building the road solely for the benefit of a man named Conti. Were there any plans for any developments at that time? There weren't any, were there? Well, A. and A. Conti had submitted grading plans, which are a necessary predicate to development plans. And the plan that A. and A. Conti and the city had determined based upon the annexation agreement was that A. and A. Conti was going to build a road to city standards within a city-designated right-of-way. I think that plan is enough to establish the plan for the road. It demarcated the start and the end. It demarcated the width. And it said city standards will apply. So that was the plan. But there wasn't any plan for local redevelopment or for some other economic engine that would be started at that place or point. And that's a good point, but the law says you don't have to build for immediate. You have to think. You always have to think to the future. Now, when that plan for the construction of the road may have been first conceived with A. and A. Conti, the economy, I think it can be generally accepted, was in a downturn. West Chicago is seeing an upturn in the economy now. And City Administrator Michael Guttman testified to that. We have experience in the city of West Chicago that shows if we, and it establishes, and he testified to it, if we put in public infrastructure and have it available, development is coming. So that was the desire. That was the need for acquiring the property. Now it had been the city's belief that it was public property when we determined that it was not. There was a determination made by the City Council to acquire the property so that we could move forward with plans for this public road. A. and A. Conti has presented his grading plan, the start of development. And with the road plan firmly in place and the ability to build a road, we believe that it will spark or can spark development. And IDOT, how does the IDOT plan factor into this? It factors into it 100% because IDOT was of the same belief that Requi Road, that portion of the road that had been demarcated originally as a public road or public road and then Requi Road, was in fact within the public domain. So when IDOT did its extraordinarily expensive widening and reconstruction of North Avenue, they made the intersection of North Avenue and Requi Road a full access intersection. This has tremendous value to the City of West Chicago because it provides safe ingress-egress because it will be fully signalized. It does open up this area for development. It plays into a part of the IDOT plan for proper and safe ingress-egress to North Avenue and to this property. But you know, this case was not like the Farina case where they were widening a public highway that was in existence already. This is very different, isn't it? It is, but the holding of Farina doesn't change though because whether Farina was widening a public highway or not, the purpose behind Farina was to say you can acquire property for a public road. You can acquire property notwithstanding the fact that there's the potential that the road may serve one private developer. But you have to look to the public to be served. And the only case that defendants have consistently cited is the Suida case, which I'm sure you're all aware of, but it's the facts of that case are completely different, where the municipality was clearly acquiring or attempting to acquire private property for a primarily private purpose where people were going to have to pay to be able to use a parking lot to be built on the property. Here, there was no evidence from the defendants that it wasn't to be a public road. There was no evidence from the defendants that the road wasn't going to be built to city standards. There was no evidence that it would not be open to any member of the public wishing to use it. Instead, their evidence centered on the fact that, well, this was a gravel driveway that they used to exit and enter their property. That's fine, but that's not to say that in the future that private gravel driveway is going to continue to serve its property. Counsel, what specific relief are you seeking from this Court? Your Honor, we're seeking to have the circuit court ruling overturned and to return this case to the circuit court so that we can commence the part of the case that talks about the actual fair cash market value to be paid for the property. That would have been the next phase in this proceeding after, as you all know, after you go through the traverse hearing, which is the property owner's right to question the taking. Once you get past that, at that point in time, your sole consideration really is, what is the value that the property owner should be paid in full compensation for the property to be taken? And that's what we would ask for. We ask that the circuit court ruling is clearly in error. It's so clear because there's such a misunderstanding by the circuit court as to the enabling ordinance. That's the first flaw. But that's five pages of the seven-page order. That's a flaw. The ruling of the Court relative to the fact that the road is only going to serve the Conte property, that's clearly in error. The Conte property, although held by a private owner now, is planned to be used by many different tenants or many different owners. It's a public road. It will open development for the Conte property. What evidence is there of those plans? Of the Conte plans? There were plans submitted at the traverse. And they're preliminary, but they show that there would be enough. It's not just bringing the property. Right. But there were plans that show the property in its final development will be a significant number of buildings. So it's not just going to be one user. I suppose if one person bought all of the property. But it's going to be opened up to a number of different people. Plus the key here is the courts say it doesn't matter how many people use it. It matters whether, is the road public? Yes. Is anybody who wants to use the road going to be allowed to use it? That answer is yes. The record shows that the city's comprehensive plan envisions development, office, research, light, industrial, manufacturing. And those properties would benefit from the public road. Is that correct? Yes. Yes, absolutely. So your position is that trial court was in error with regard to the failure to establish a prima facie case because the ordinance was not, as the court deemed, based upon a false premise. Secondly, that the proposed taking is clearly for a public purpose. And your position is that the taking is necessary and there's no abuse of discretion by the city. Absolutely. The legislative decision made by the city establishing necessity is clear. And we provided the circuit court with a case law that talks about what does necessary mean. And none of that is evaluated. Necessary, according to the County Board of School Trustees of Macon County, there's been recognition that the word necessary is construed by cases examining eminent domain to mean expedient, reasonably convenient, or useful to the public. It doesn't mean indispensable or absolutely necessary. One of the issues that the trial court had was the length of the road. A circuit court can't look at length of a road. Case law is clear. You can't determine that you're going to be an additional planner for the city of West Chicago. The city of West Chicago has determined that this property needs to be acquired for a public purpose. When the court seeks to engage itself in planning, appellate courts don't like it. The trial court acknowledged that it's not within his realm to get into that, but he actually did, correct? I believe he did, yes. I think that it was couched in such a way as to move away from that. But throughout the conduct of the hearing, on behalf of the city of West Chicago, we had filed a motion in limine so that we would exclude testimony relative to the route of the road because that's not a proper purpose for the court. And yet, over my objection on several occasions, the court, I think, did exactly that. It was attempting to move into, is this a proper route for the roadway? In review of the seven-page opinion, I just believe it's clear and should be clear to the court that the trial court, there is no other option for this court. There is no other option but to reverse the trial court. The opinion issued by the trial court is clearly against the manifest way of the evidence. And, in fact, I would humbly submit to you that the defendants in filing, the defendant property owners in filing their brief could find nothing to hang its hat on before you. You can grapple. Yeah. And I just thank you for your time and attention. And in conclusion, I would say on behalf of the city of West Chicago, that this court finds that the circuit court's order was against the manifest way of the evidence and find it in favor of the city of West Chicago and remand the case, therefore, then for further proceedings relative to the determination. Thank you. You'll have time for rebuttals. Mr. Seidman. Good morning. May it please the court, my name is Jim Seidman. I represent the capital league, Virginia Petrovod, who is the trustee of the trust that owns the subject property in this case. We are asking this court to affirm the circuit court's granting of the traverse and motion to dismiss this case. Because as the court found, there was clearly no public purpose for this case. It was never articulated in the ordinance, the enabling ordinance that was passed. It was never articulated in the testimony that was given at the hearing. Well, before we get into that, I mean, generally, these cases proceed in a certain legal and chronological order. As you know, if the city introduces, establishes an ordinance, that would normally be sufficient to shift, establish a criminal case, shift a burden to the objectors. But this case seemed to go off on a tangent when the trial judge felt that the ordinance was enacted on a mistaken belief that the road was a public road. And there's recitals in the ordinance, as you know, that reference a history where that was the belief at one time. But clearly, that was well known when the ordinance was enacted, that it was not a public road. Gutman, the administrator, testified he knew it was not a public road, and this was well before the ordinance was enacted. So you have the case getting off track at the beginning. How do you address the issue that the court erred in making the assumption that the ordinance was based on a flawed assumption that it was a public road? How do you respond to that? Well, I respectfully disagree that it was a mistake on behalf of the court. It was a mistake on behalf of the city of West Chicago. The ordinance was flawed. How was it flawed? It was flawed because the ordinance first identified Breck Road as a public road. Secondly, it identified in the ordinance it stated that there is some sort of dispute as to whether the road is publicly dedicated. And as Judge Popejoy found, both of those premises were flawed. Was that an allegation or was that recounting the history of the development of the area and the road? I ask you a point of question. Why would the city have filed a condemnation action on a public road that they wouldn't have needed to file an action on? Why would they have done that? That's a good question for the city. I believe the city filed this condemnation action believing that the road was a public road and believing that they had an agreement with a property owner, Mr. Conti, to build a road. What would be the purpose, though, of filing a condemnation action on a public road? It's a useless act. I would agree. It's not a public road. And what the circuit court held is that a public purpose needs to be identified for them to take that road. So when Mr. Gutmann was asked in his testimony why has the city determined that a public road is needed to be built in this area, his answer was not there's some sort of public purpose here. His answer was, well, looking at the public documents, they show it's been a public road for at least 17 quarters. He then says, in addition, we have a contractual obligation to one of the property owners. And then he mentions, and finally, economic development purposes. And there was no evidence put in at the hearing as to those economic development purposes or what they are. But didn't Gutmann also specifically testify before the ordinance was enacted that he found out and he knew it was not a public road? Didn't he specifically testify to that? He did. But that doesn't cure the fact that the ordinance, which they say makes their prima facie case, is flawed. It shouldn't be. What's your authority for your argument that a mistake in an ordinance makes that ordinance not viable? Well, I believe the best authority is the People x Relative Division Finance versus YMCA case, the Supreme Court decision in 1981. In that case, and I'll quote, the court said the legislature has the power to confer the right of eminent domain, but it is the province of the courts to determine whether such grant of power has been made and whether it is exercised within that grant. The construction to be placed by the court upon any law purporting to authorize the taking of private property for public use is one of strict construction. So we don't simply take an ordinance and say, well, we have an ordinance. We'll put it into evidence, and my case is made. That's not the way any trials work, and it's not the way constitutional trials work based on the idea of eminent domain. Once that ordinance is introduced and there's cross-examination, then there's evidence to show that that ordinance was passed in a sloppy and incompetent manner and that the entire premise for the ordinance, that this road is a public road and that there's some sort of dispute, that this road has been publicly dedicated, is not true. That ordinance is not incompetent. But where is the premise, though, the false premise? They filed the condemnation action. The government testified they knew before they filed it. Where is the false premise here that this was a public road? I guess I would answer that question this way. When stripped of the statements in the ordinance that the road is a public road and there's a dispute as to whether it's publicly dedicated, there's no public purpose identified, and there was no public purpose identified in the testimony either. There's a lip service statement that said that the road will be used for current and future development, but that's not enough. If somebody comes to my house and says, I'm going to take your driveway and I'm going to make it a public road, I'm going to allow everybody to use that driveway, everybody's question, natural next question would be, why? Why is it going to be used? Wasn't there testimony regarding the city's comprehensive plan for future development? The city's comprehensive plan for future development was back in 2004. It was not a development plan. These are plans and things that are updated from time to time for the city, and it basically shows areas and what the uses of those areas currently are. But there's nothing in that plan that talks about development or a development plan. There's nothing in the record to show what the economic development here would have been. And in the Suida case, the court said to contemplate or to constitute a public use, something more than mere benefit to the public must flow from the contemplated improvement. In Suida, there was far more of a connection to a public purpose in the taking than there was here. At least there was an ordinance in that case that identified some benefits to the public. In that case, there was testimony and there was statements in the ordinance that expanding the racetrack facilities would contribute to the racetrack's growth and economic growth in the region. And there was also testimony and statements in the ordinance about public safety and how another parking lot would contribute to public safety because there wouldn't be people walking across streets where they weren't supposed to. And the court still said that that wasn't enough. That wasn't enough for the taking of a person's business for another parking lot to solely benefit a private racetrack. And that's what the court found here. And this case comes before the court on a manifest weight of the evidence. And when a travesty is filed, it's the burden of proof of the condemned law to prove the disputed allegations. Well, that's assuming that there wasn't a primary case to shift the burden. If we were to find that the court erred and there was a primary case to shift the burden, where does that leave your case? We still win. And the reason we still win is because the court still found that there was no evidence of public purpose for this taking. The court specifically found that the purpose for this taking, based on the evidence that it viewed and weighed and judged the credibility of the witnesses, that this taking was to benefit a private landowner, owner, or company. It had no public purpose attached to it. And when reviewing that trial court's decision, a reviewing court must determine whether that decision is against the manifest weight of the evidence. A manifest weight of the evidence is a high standard, and I don't believe they've met that burden in the brief or the argument here today. The courts have said a reviewing court will not overturn a trial court's findings merely because it does not agree with them or might have reached a different conclusion had it been the prior effect. That's the Yellow Book v. Stoltman case from this district, or from the first district, rather, in 2012. How do you respond to counsel's argument that anybody will be able to drive on this road and that's enough to establish a public purpose? It's a circular argument, Your Honor. Everyone will be able to drive on that road. That's merely saying, well, this road's going to be a public, we're going to take this road for a public road because it's going to be a public road. The definition of a public road is that anybody can use it. But as I was saying before, the natural question after that is, well, why is everyone going to be allowed to use this road? Is it going to connect two roads and provide a thoroughfare or a way of travel, like the cases that they cite? Is it going to widen an existing public highway, like the Farina case? No, it's not going to do any of those things. Is it going to be able to have access to a public park that is actually a plan for development, or at least articulated somewhere in the testimony of what the use is going to be, or what the economic development is going to be? Is it going to be open to the public to get back to the park and enjoy themselves and picnic or do whatever they do? There's none of that here. The argument is circular because they say, we want the road, we're going to take it, and everybody's going to use it. But under that analysis, they could come and take my driveway tomorrow and say, well, we have an ordinance, we say everybody's going to use it, so I guess I can't get anybody off my driveway if they want to use it and sit there and drive on it. It doesn't make any sense. Counsel, let me ask you a question about the procedural possibility case at the trial court. The trial judge found there was no prima facie case, found that the ordinance was flawed. However, as you know under the case law, the introduction into evidence of a valid ordinance, if you were to find that, establishes a prima facie case requiring the acquisition of the property in question, making it the burden of the party who challenges the condemnation to come forward with evidence that the city abused its discretion with respect to the decision to proceed with the condemnation. Okay, so if the burden, the trial court found the burden that was shifted to those challenging the condemnation, where does that leave your case? Well, the trial court did find that the evidence, that the only evidence in the case, was that there is only one property owner within the city of West Chicago who would benefit from the city's taking, and that is A.D. Coxman. But if Justice Hudson and I, we were to find that the burden shifted to the defendant, then you would have the burden, your clients would have the burden of presenting evidence, and the city should have the opportunity to rebut whatever evidence you present to show that there was not a public purpose. Do you understand the point? I understand. The city never got by first base, and if we say they did get by first base, burden shifts to the defendants, the city should have an opportunity to rebut and challenge whatever evidence you seek to put on. But I respectfully submit that the city did have that opportunity. Witnesses testified. They were cross-examined. They were allowed to articulate whatever public purpose they might see is present. And who called those witnesses? Both parties called the witnesses at the fair discussion. And the court sat there and weighed their testimony and weighed their credibility and decided the evidence. Yeah, but the trial court's looking at it from a flawed lens, so to speak. The way it should proceed is if the ordinance is considered to be valid, the burden shifts. The challenging party must come forward first. There's a missing step here. The trial court found the ordinance was flawed and then got into other matters before it actually answered the initial question, the important question of the validity of the ordinance and the burden shift. So you're trying to mix it all up into one proceeding, but there was no clear delineation of the finding of a crime-offensive case, other than there was no crime-offensive case because the ordinance was invalid. I think that decision was correct, but then I think that the trial judge went on to hold that even if there was a crime-offensive case made in this case, that the evidence still showed that the only property within the city of West Chicago that would benefit from this taping was A.D. Conti, and that there was no benefit to the general public at large, which is what a public purpose requires. And so wouldn't it be your client's obligation to prove by clear and convincing evidence that the city abused its discretion? Yes, and I believe they did that. And you think you agree that's the burden. It's got to be clear and convincing evidence that there was no public purpose. Yes, and I believe that when the evidence was presented and considered, there was no evidence submitted by anyone in this case that there would be some sort of public purpose served by this road. And your contention is that because currently, right now, the only property owner that would benefit from the roadway would be Conti, and because of that, should not look at possible future development at all. The city abused its discretion because it's the current news, or that's really what we look at, what the city should be looking at, and not future development, as Ms. Dixon argued. If there was evidence of future development that was submitted, the court could have looked at it, but unfortunately for the city, there was no such evidence. But the city was deprived of that opportunity because the trial court just said the ordinance is invalid and found that a prima facie case had not been proven. I respectfully disagree. They had Mr. Gutman on the stand for the entire hearing. He could have testified to any of those issues. They were not deprived of submitting that evidence at all. And Mr. Gutman's testimony went back to the fact that this is a public road, which was flawed, and that they had an agreement, a private agreement through annexation. But Gutman testified this was a public road. He testified to that? Is that accurate? When he was asked what is the reason or why has the city determined that a public road is needed to be built in this area, the first thing he said was while looking at public documents, they show it's been a public road for at least since the 1940s. Well, looking at the documents, didn't he also clearly testify, and I answered this earlier, that he was aware of the fact that it was not a public road? When he was cross-examined, he finally admitted that. Well, the point was, I think, of that examination was to show that there had been confusion, past confusion, about whether or not it was a public road, correct? There was confusion. There was confusion. So members of the public, people in the community, were actually confused and thought some people thought it was a public road, but it actually turned out it was not. It never was, correct? There was no evidence of confusion of the general public. Mr. Gumbin may have been confused. Maybe the city of West Chicago was confused, but I would submit there was no confusion. They just did an incompetent job in enacting the ordinance. They were put on notice since 1989 when they annexed the Pfeiffer Bunce property that this was private property, and yet they still marched forward with the ordinance, even after they amended the ordinance to correct it and correct the amount of property they were taking, and even when he took the stand and testified to still maintain this is a public road. And it wasn't until he was cross-examined and shown that annexation from 1989 that he admitted, well, I guess somebody must have made a mistake. And that testimony showed that the ordinance was flawed. And when you have a flawed ordinance, a flawed ordinance that raises its credibility into question should not be able to be used to make a prima facie case. But even if it did here, and I believe the court was well within its discretion to hold that it did not, the evidence still showed that this road was being built for cutting, period. And they had every opportunity to come before the court with any evidence they wanted. It was their burden of proof from the beginning, whether the ordinance made a prima facie case or not, to put forth evidence that this taking was done for a public purpose, that it was necessary for a public purpose. And they didn't do it, and the circuit court correctly determined on the evidence that they failed in their burden of proof and that decision should be affirmed. I know my time is up, so I'd just like to close today with the way the Suida court closed. And what the Suida court said is the power of eminent domain is to be exercised with restraint, not abandonment. I think that quote is very, very pertinent, significant, and applies to today's hearing. They exercised the power of eminent domain with abandonment, not with restraint. They enacted a sloppy ordinance, and they didn't put any evidence in it to show that this taking was necessary for any public purpose. So for those reasons, we would ask the court to affirm the trial. Thank you. Thank you. Ms. Dixon, you're welcome. Ms. Dixon, could you answer an initial overarching question? Those encounters laid down the bundle in saying if that's the issue of the ordinance being flawed, even if it was valid, you did not present any evidence to establish a public purpose for the taking. How do you respond to this argument? I think it's absolutely incorrect. The city established through the testament, first through the filing of the condemnation ordinance, and then through the testimony of Michael Gutmann, and as well Art Conte, who was a witness called by the defendants, that this road was going to be a public road, open to all public users. It was going to be built to city standards and specifications, and it was going to be entitled to the city of West Chicago at the time it was constructed. All of those are elements recognized by Illinois courts when you're dealing with a public road that establish the public purpose, the public nature, the public use of the road. So there was ample evidence. Well, then, in your answer, then, if you can address counsel's argument, well, why couldn't then, if that's the standard, the city go take someone's driveway and say we want to make it a public road. Everybody will be able to drive on it. So that's a public purpose. What's the difference? It's not as easy as that, of course. The council doesn't have to fear the city's going to be taking a driveway. I think it's a valid point that he made in terms of listening to the arguments today. How do you respond to it? Well, that argument is only valid if you think that if you forget the fact that the city has to have a public purpose in mind for a road. The city could not just take a driveway. It could take a succession of driveways, I suppose, if it provided a route that the city believed was necessary. But the taking of someone's driveway, it would be, I think, very hard for any municipality to establish that the taking of somebody's driveway would be a public use. Here, however, the testimony was different. The city, while it was a gravel road used by the property owners, the city's plan was, and the city established that its plan was, to acquire a 66-foot right-of-way to create a public road. That public road was going to be built to city specifications and standards and open to the public. Would it connect up to North Avenue then? It would connect up to North Avenue. When you take somebody's driveway, you don't necessarily connect up to them with a public road, do you? No. But in this case, if somebody's private driveway provided, if the municipality's planning showed that a driveway was necessary to be taken, then the city, in its planning, could take any private property. That's the state of the law of Illinois. You can take private property. A governmental entity is entitled to take public property. The test, the property owner always gets to test that. Here, the property owners didn't test that. The testimony never raised any issue, and, in fact, none of the pleadings raised an issue relative to whether this property was going to be acquired for a public road. There clearly was no evidence to that. The only evidence is Michael Gutmann's testimony and Archonti's testimony that this property was being taken so that the city could open a road freely and open to all. And fulfilling a legal obligation that the city had to the Contes. Is that not correct? Partially to fulfill that. But here, the city was a party to that contract, too. It wasn't just to benefit Conte. The city, many development agreements that municipalities enter into, you have a private property owner paying for and putting in public infrastructure. That's a benefit to the city because it gets the city-required public infrastructure built and then at a private property owner expense. So there was nothing untoward about that. The city, as part of its planning goals, as your honors have recognized, the plan for this road, this road was designated on both the comprehensive plan of the city, the zoning of the city, the zoning code of the city. So the city took the opportunity to contract with a private developer to get a road it wanted built. And so, yeah, the agreement did call for that. But it wasn't just to serve Mr. Conte. It was to open, or A&A Conte, which is the property owner, was to open this area to future development. The fact that he might have owned some of the property we served doesn't matter. But it gave him incentive to enter into an agreement whereby he would undertake the cost of building the road. That's certain. When the argument that council makes that the city filed an action to condemn public property makes no sense. The city would never, no governmental entity would file a condemnation action to acquire public property. There's no reason for that. I think his point was that it was actually done in a less than careful manner. That was the point that I claimed. And that was the reason that that happened that way. If I may just answer, I think that that's inaccurate as well. Because what those, the ordinance was to provide context. It was to provide history. It was to provide the reason for the taking. When the city called it a public road, that's because from the earliest days, this property, a portion of the property to be acquired, was called out as public road. So the phrase public road was the identifier that was used on the original documents relative to the road. It wasn't to confuse anybody into thinking that the city was going to waste its city tax dollars by filing condemnation to acquire property that was already public. That was in the recitals. That was not pled. The city never pled this was a public road. That was in the recitals of the background and history of the property. That's correct. And, you know, the case law that defendants rely upon to have you conclude that it was sloppy, the case law doesn't even apply. And in the reply brief of the city on pages 7, 8, and going on into 9, I outlined for you the reasons that those cases don't apply. The city wasn't sloppy. The city didn't do anything in error. The city didn't take this lightly. The city knew exactly what it was doing. It was fulfilling a plan that the city had to acquire property for a public road. And last, I do want to say, SWETA is not applicable here. The crux of the SWETA case was that the public wasn't going to be freely allowed to use the parking garage to be built. They were going to have to pay a fee if they wanted to park in the garage. There's no fee. There's no entry tag. You don't need a city sticker to use what will be a public road. You can walk, bike, drive on it as soon as it's constructed. There's no restrictions. No restrictions at all to anyone. In closing, I would ask on behalf of the city of West Chicago that this court find that the circuit court's ruling is clearly against the manifesto of the evidence and it would be appropriate on such finding to return the matter to the trial court and allow the city to proceed with the case, which would be the valuation of the property in the event that the city is allowed to acquire it. Thank you. Thank you. The court thanks both parties for the quality of your arguments today. The case will be taken under advisement. A written decision will be issued.